## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

KANDI A. AIREY
34616 Delaware Avenue
Frankford, DE 19945

       Plaintiff,

v.

PENINSULA REGIONAL HEALTH
SYSTEM, INC. d/b/a PENINSULA
REGIONAL MEDICAL CENTER
100 East Carroll Street
Salisbury, MD 21801

       Serve on: Resident Agent
               Daniel J. Mulvanny
               100 E. Carroll Street
               Salisbury, MD 21801
and

ELIZABETH PERNAL, M.D., P.A.
813 A Eastern Shore Drive
Salisbury, MD 21804

       Serve on: Resident Agent
               Ivan Corcoros
               4090 Grosse Pointe Drive
               Salisbury, MD 21801


ELIZABETH B. PERNAL, M.D.,
Individually and/or as Agent, Servant and/or
Employee of PENINSULA REGIONAL
HEALTH SYSTEM, INC. d/b/a
a/k/a PENINSULA REGIONAL MEDICAL
CENTER and/or ELIZABETH
PERNAL, M.D., P.A.
813 A Eastern Shore Drive
Salisbury, MD 21804

       Defendants.

**Civil Action No.**:_____

**JURY TRIAL DEMANDED**

## COMPLAINT

NOW COMES the Plaintiff, Kandi A. Airey (hereinafter "Plaintiff") by and through her attorney, Robert E. Joyce, Joanne L. Suder and The Suder Law Firm, P.A. and sue the above-captioned Health Care Providers and, in support of her claim, alleges as follows:

1.      Jurisdiction is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C §1332 in that the controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs and is between citizens of different states.

2.       The amount in controversy is in excess of Thirty Thousand ($30,000.00) and thereby exceeds the limits of concurrent jurisdiction pursuant to Courts and Judicial Proceedings §3-2A-02(a)(1).

3.      This is a unilateral waiver of compulsory arbitration from the Health Care Alternative Dispute Resolution Office of Maryland pursuant to Courts and Judicial Proceedings §3-2A-06 B (attached hereto as Exhibit "1" is a copy of the Waiver of Arbitration).

4.      At all times relevant to this claim, Defendant Peninsula Regional Health System, Inc. d/b/a Peninsula Regional Medical Center (hereinafter referred to as "Defendant Hospital") is/was a corporation, professional association and/or entity organized under the laws of the State of Maryland and licensed to practice medicine through their agents, servants and employees and represented to the public and the Plaintiff that it possessed the degree of skill, knowledge, care, diligence and standard of medical care ordinarily possessed by reasonably prudent hospitals, professional associations and/or entities acting under the same or similar circumstances.  Defendant Hospital, through its agents, servants and/or employees owed a duty to Plaintiff to exercise the degree of knowledge, care, skill and judgment ordinarily exercised by

2

reasonably prudent and competent hospitals acting in the same or similar circumstances in treating and caring for Plaintiff.

5.      At all times relevant to this claim, Defendant Elizabeth Pernal, M.D., P.A. (hereinafter referred to as "Defendant P.A.") is/was a corporation, professional association and/or entity organized under the laws of the State of Maryland and licensed to practice medicine through their agents, servants and employees and represented to the public and the Plaintiff that it possessed the degree of skill, knowledge, care, diligence and standard of medical care ordinarily possessed by reasonably prudent hospitals, professional associations and/or entities acting under the same or similar circumstances.  Defendant Hospital, through its agents, servants and/or employees owed a duty to Plaintiff to exercise the degree of knowledge, care, skill and judgment ordinarily exercised by reasonably prudent and competent hospitals acting in the same or similar circumstances in treating and caring for Plaintiff.

6.      At all times relevant to this claim, Defendant Elizabeth B. Pernal, M.D. (hereinafter referred to as "Defendant Pernal") is/was an obstetrician and gynecologist licensed to practice medicine in the State of Maryland and was acting individually and/or as an agent, servant and/or employee of Defendant Hospital and/or Defendant P.A.   At all times relevant to this Claim, Defendant Pernal represented to the public and the Plaintiff that she possessed the degree of skill, knowledge, care, diligence and standard of medical care ordinarily possessed by reasonably prudent obstetricians and/or gynecologists acting under the same or similar circumstances.  Defendant Pernal owed a duty to Plaintiff to exercise the degree of knowledge, care, skill and judgment ordinarily exercised by reasonably prudent and competent obstetricians and gynecologists acting in the same or similar circumstances in treating and caring for Plaintiff.

3

7.     That at all times relevant to this claim the above-named health care providers, through their actual and/or apparent agents, servants and/or employees, undertook to render care and treatment to the Plaintiff and it therefore became the duty of the above named health care providers and/or their actual and/or apparent agents, servants and/or employees to exercise that degree of care, skill and judgment exercised by reasonably prudent and competent facilities, corporations, health care providers and assistants in treating and caring for Plaintiff in the same and/or similar circumstances.

8.     Upon information and belief, Defendants employed or contracted as the principal, the services of gynecologists, obstetricians, physician assistants and others who rendered care and treatment to the Plaintiff as described herein and therefore are liable under the doctrine of respondeat superior for any negligent acts or omissions committed by their employees, agents or servants in the treatment and/or failure to treat Plaintiff.

9.     On August 17, 2009, the patient called Defendant P.A. for an appointment with complaints of bleeding four (4) days prior and the more recent development of right sided lower quadrant pain.  Plaintiff relayed to Defendant P.A. that the pain felt similar to pain she felt when she had a previous ectopic pregnancy in the tube on the left side three (3) years earlier, with the loss of the left tube, which had been performed by the Defendants. Defendants were aware of the prior history of left ruptured ectopic pregnancy and Defendant Pernal was on call in Defendant Hospital that evening.

10.     Plaintiff was advised to by Defendant P.A. to go to the emergency room at Defendant Hospital.  The pregnancy test was positive and the patient relayed to the defendants that the pain felt exactly like her previous ectopic pregnancy.  The ultrasound was

4

negative for gestational sac in uterus.  Despite this history and complaints, she was released

without further treatment, including but not limited to the administration of methotrexate.

11.     On or about the early morning of August 18, 2009, at approximately 1:30

a.m. with a prescription for pain medication, a blood work slip for a quantitative, and

instructions to follow up with Defendant P.A./ Pernal.  That morning the Plaintiff contacted

Defendant P.A. and relayed the fact that the ER was requesting further blood work.  Defendant

P.A. requested that the Plaintiff come in with the blood work forms, and the Plaintiff was

referred back to the Defendant Hospital on August 20, 2009 to perform the blood work. The

phlebotomist at Defendant Hospital that drew the blood acknowledged that the order was STAT

and the Defendants would have the results within a hour.

12.     On or about Friday, August 21, 2009, Plaintiff called and left a message

for Jan, the Defendant P.A.'s nurse wanting to know what the results were. No one called back.

On Monday, August 24, 2009 Plaintiff again left a message for Jan with two phone numbers

with which the Plaintiff could be reached. No one called back.

13.     On Tuesday, August 25, 2009, upon arrival at work that moring, the

Plaintiff was informed by her supervisor that just prior to her arrival the Defendant P.A. had

called her and that and it sounded really urgent and I needed to call them back immediately,

which she did.  Plaintiff was informed that the results from the test done on Thursday, August

20th, showed that my quantitative numbers had gone up, indicating that she had not miscarried

or completely miscarried and was still pregnant. Defendant P.A. set up an appointment for her to

come in the next day, August 26, 2009.

14.      By noon on August 25, 2009, Plaintiff was in so much pain that she had

to leave work early.  Plaintiff called her sister who met her at her house and was going to drive me to Salisbury to the Defendants.  Plaintiff presented to the Defendant P.A. in hopes that she could see Defendant Pernal, but upon relaying the symptoms she was having to the staff she was sent to the ER.

15.     Upon presentation to the ER, the Plaintiff again went over all of her symptoms with the admissions, and even reminded Defendants that I had been to the ER eight (8) days earlier. By this time, the pain was so intense that the Plaintiff could barely walk, she was streaming blood and had passed four clots. She also reminded them that she believed the pain was similar to her other ectopic pregnancy.  The Plaintiff was in extreme pain during a pelvic exam which was performed and a subsquent ultrasound revealed internal bleeding. Furthermore, blood testing again confirmed her pregnancy. Defendant Pernal was called by Defendants' staff.

16.     Upon arrival, Defendant Pernal performed a pelvic exam which again confirmed the right sided pain.  However, Defendant Pernal stated she did not think it was an ectopic pregnancy because there was "so much blood."  However, Defendant Pernal had the Plaintiff sign an informed consent form stating some risks of laproscopic surgery in case she had to "see her tube" in case she failed to find the products of conception in utero.  Defendant Pernal was reminded that when she did this previously to Plaintiff, she lost her left tube during removal due to scar tissue from her C-section.  Defendant Pernal and the Plaintiff also discussed her future child bearing plans, and the Plaintiff told Defendant Pernal that if the pregnancy was in fact tubal and the tube needs to come out then to do what is healthiest for her, but that she "wanted the option to have another child if at all possible."

6

17.    When Plaintiff came out of surgery, Defendant Pernal told her that it was all taken care of, that it was in fact a in utero pregnancy, that she performed a D&C, that she shouldn't have anymore problems and that she needed to follow up in one week with her, which was also relayed to her family in the waiting room.

18.    When the Plaintiff and her family inquired about all of the pain and internal bleeding, Defendant Pernal stated that thought it was a complication from the miscarriage.  Plaintiff was released on bed rest and pain medication.

19.    Plaintiff called the Defendant P.A. on August 26, 2009 to schedule her one week follow up appointment and was told the earliest appointment available was September 11, 2009 - 17 days after the procedure.  Plaintiff also called the Defendants office on September 3, 2011 regarding a leave slip for work which she needed and the Defendant P.A. told her that they were calling in a blood work request to Quest Diagnostics for her to have blood work done prior to the September 11, 2009 appointment.  The Plaintiff also mentioned that she was still in pain in her right lower abdomen.

20.    On or about the morning of September 4, 2009, the Plaintiff woke and was getting her children ready for school when suddenly she was stricken with unremitting pain in her right lower abdomen, so severe that she felt like her stomach was exploding and she was unable to move.  The Plaintiff's fiancé called 911 and the Plaintiff was rushed to the emergency room at Defendant Peninsula where she remained in severe and unremitting pain, so severe that she could not tolerate another pelvic exam.

21.    Defendant Pernal arrived at Defendant Peninsula and decided to perform and exploratory laparotomy on the right side. Plaintiff, her fiancé and Defendant Pernal again

7

asked about her plans for future children and again the Plaintiff and her fiancé answered the same as previously - that they would like to have children but to do what was healthiest for the Plaintiff at that point.  Plaintiff signed another form and she was rushed to surgery.

22.    When the Plaintiff woke up Defendant Pernal informed the Plaintiff that she had to remove the tube, and that there was a growth that had ruptured the tube completely that was about 1 ½ inches in length.  She also informed the Plaintiff that she could never get pregnant again without IVF treatment.

.          23.    As a result of the negligence of the Defendant in failing to adequately or emergently treat Plaintiff, Plaintiff's condition worsened causing a ruptured ectopic pregnancy, massive hemorrhaging into her peritoneum, causing massive bleeding, severe pain and other complications requiring a second surgery to address the complications and remove the cyst from the fallopian tube.  Worse yet, the Plaintiff had a previous history of a prior left ectopic pregnancy that she alerted them to on several occasions from August 17, 2009 through September 4, 2009 which was not properly addressed.  As a result, she lost her right fallopian tube and is unable to have children in the future.  In addition, she was unable to work for a long period of time causing her to lose her employment and wages.  Furthermore, she endured extreme and unremitting conscious pain and suffering, permanent scarring and loss of a normal lifestyle.   Had Defendants treated the signs and symptoms of ectopic pregnancy in a timely fashion, Plaintiff would have recovered without any significant disability or damage.

## COUNT I - NEGLIGENCE

Plaintiff, Kandi A. Airey , adopts and incorporates by reference paragraphs one (1) through twenty-three (23) of the Complaint as if fully set forth herein and further alleges as

follows:

24.     At all times relevant to this complaint and contrary to acceptable standards of care as practiced by reasonably prudent gynecologists and/or hospitals acting in the same or similar circumstances, the Defendants and their actual and/or apparent agents, servants and/or employees deviated from the standard of care in that they were negligent and breached the duty imposed upon them, including but not limited to the following ways: in failing to perform timely and aggressive treatment of Plaintiff's ectopic pregnancy; failing to admit the Plaintiff overnight for observation and repeat testing; failing to offer pharmacological therapies which could have effectively treated the ectopic pregancy in a timely fashion and avoided rupture; in failing to disclose to Plaintiff the risks of not timely or aggressively treating an ectopic pregnancy; failing to prevent a ruptured ectopic pregnancy by performing timely surgery and/or performing the procedure properly; failing to order tests and incorrectly interpreting tests which were ordered; failing to properly identify the cause of the Plaintiff's condition; and, in being otherwise negligent.

25.     Plaintiff rely on the doctrines of res ipsa loquitor and informed consent.

26.     As a direct and proximate result of the negligent acts and omissions of the Defendants, the Plaintiff, with no negligence on her part, suffered personal injuries and damages, including an acute respiratory distress syndrome, hypoxia, loss of a fallopian tube, massive internal hemorrhaging into her peritoneum requiring her to undergo radical impatient surgical therapy and suffer permanent disability and scarring.  She has experienced conscious pain and suffering and emotional pain and suffering; was caused to incur medical expenses, and he has incurred and will incur future pain, suffering, mental anguish and permanent disability, including

but not limited to the inability to have children in the future.

27.     That each of the damages and injuries sustained by Plaintiff is a direct and proximate result of the aforesaid negligence of the health care providers named herein and/or their actual and/or apparent agents, servants and/or employees as aforesaid, without any negligence of the Plaintiff contributing thereto.

WHEREFORE, Plaintiff, Kandi A. Airey, bring this action against the above named health care providers and/or their agents, servants and/or employees and claims compensatory damages in excess of thirty thousand dollars ($30,000.00) plus costs, and for such other and further relief as may be necessary and proper.

## COUNT II-LACK OF INFORMED CONSENT

Plaintiff, Kandi A. Airey, adopts and incorporates by reference paragraphs one (1) through twenty-seven (27) of the Complaint as if fully set forth herein and further alleges as follows:

28.     Plaintiff asserts that the Defendants and/or their actual and/or apparent agents, servants and/or employees had an absolute obligation to inform Plaintiff of the risks involved with the risks of an exploratory laparotomy versus pharmacologic treatment, including but not limited to the risks inherently involved in the treatments; the risks involved with the delay in surgical intervention versus pharmacologic treatment; the risks involved with the failure to timely diagnose and treat an ectopic pregnancy and the risks involved in delaying treatment for such a condition;  the risks involved with failure to treat signs and symptoms of a ruptured ectopic pregnancy; the non-emergent nature of the treatments and, the risks of not being properly examined, treated, monitored, diagnosed and managed.  The Defendants failed in their obligation

10

to inform Plaintiff of these risks, and otherwise failed to provide and/or obtain proper informed consent.

29.     Had the Plaintiff, as well as any reasonable person under like or similar circumstances been advised of these risks in their care and treatment by the Defendants, Plaintiff would have refused such treatment.

30.     As a result of the lack of informed consent, Plaintiffs relied upon all of the Defendants representations and, as a result, increased Plaintiff's compromised condition which directly and proximately caused the injuries and damages complained of as described above.

31.     That each of the damages and injuries sustained by Plaintiff are a direct and proximate result of the negligence of each of the Defendants named herein and/or their actual and/or apparent agents, servants and/or employees without any negligence of the Plaintiff contributing thereto.

WHEREFORE, Plaintiff, Kandi A. Airey, brings this action against the above named Defendants and claims compensatory damages in excess of thirty thousand dollars ($30,000) plus costs, and for such other and further relief as may be necessary and proper.


Respectfully submitted,


_____/s/_____
Robert E. Joyce
Federal Bar #26427
841 E. Fort Avenue
#250
Baltimore, MD 21230
(443) 904-5706

11

Joanne L. Suder
The Suder Law Firm, P.A.
210 E. Lexington Street
Suite 100
Baltimore, MD 21202
(410) 727-8177

Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff, Kandi Airey, by and through her undersigned counsel, hereby respectfully

request a jury trial in this matter.

Respectfully submitted,


_____/s/_____

Robert E. Joyce
Federal Bar #26427
841 E. Fort Avenue
#250
Baltimore, MD 21230
(443) 904-5706

Joanne L. Suder
The Suder Law Firm, P.A.
210 E. Lexington Street
Suite 100
Baltimore, Maryland 21230
(410) 727-8177

Attorneys for Plaintiff